The Honorable L. Candy Ruff State Representative 40th District 321 Arch Leavenworth, Kansas 66048
Dear Representative Ruff:
You request our opinion on (1) whether K.S.A. 73-1211 precludes the Kansas Commission on Veterans Affairs (KCVA) itself from prosecuting claims on behalf of veterans before the federal Veterans' Administration, and (2) whether K.S.A. 2006 Supp. 73-1234, as amended by L. 2007, Ch. 151, § 1, requires the KCVA to prosecute all veterans claims only through other veterans service organizations that are participating in the service grant program administered by the KCVA.
• Kansas statutes
Both statutes about which you inquire address veterans service organizations prosecuting claims on behalf of veterans with the federal Veterans' Administration. K.S.A. 73-1211 provides:
 "All claims filed with the federal veterans' administration by the Kansas veterans' commission shall be prosecuted by an accredited representative of one of the participating veterans' organizations. No employee of any veterans' organization shall participate in or receive any funds hereinafter appropriated or made available to the Kansas veterans' commission unless such employing veterans' organization shall prosecute any and all claims to the federal veterans' administration that are referred to them or their employees by the Kansas veterans' commission."
K.S.A. 2006 Supp. 73-1234, as amended by L. 2007, Ch. 151, § 1, provides in pertinent part:
 "(a) The Kansas commission on veterans affairs shall establish and administer a veterans claims assistance program in accordance with this section to improve the coordination of veterans benefits counseling in Kansas to maximize the effective and efficient use of taxpayer dollars and to ensure that every veteran is served and receives claims counseling and assistance. . . . No employee of the Kansas commission on veterans affairs shall act as an agent with power of attorney for any claimant.
 "(b) The veterans claims assistance program shall be implemented and administered through annual service grants to eligible veterans service organizations pursuant to grant agreements entered into with the Kansas commission on veterans affairs in accordance with this section."
• Federal law
The Secretary of the United States Department of Veterans Affairs may recognize representatives of organizations that can act on behalf of veterans in the preparation and prosecution of claims before the federal Veterans' Administration.[1] The term recognition, as used in the regulations on representing claimants before the federal Veterans' Administration, means certification of organizations by the Department of Veterans Affairs to represent claimants.[2] Similarly, accreditation refers to the Department's recognition of representatives or agents who represent claimants.[3] A representative is a person who has been recommended by a recognized organization and accredited by the Department of Veterans Affairs.[4] A representative or agent must file a power of attorney with each claim.[5]
An organization that is created and primarily funded by a state to serve the needs of veterans may be recognized as a veterans organization.[6] The KCVA is recognized by the Secretary as a state veterans organization that may present and prosecute claims before the federal Veterans' Administration.[7] Currently, the KCVA has thirty-three representatives who have been accredited by the Secretary.[8]
• Rules of statutory interpretation
The resolution of both questions requires determining whether the Kansas legislature intended to authorize the KCVA as a recognized veterans service organization that could represent veterans in the prosecution of their claims with the federal Veterans' Administration; or alternatively, whether the legislature intended to authorize the KCVA only to fund other veterans service organizations that would represent veterans in the prosecution of claims with the federal Veterans Administration.
 "In determining legislative intent, we are not limited to consideration of the language used in the statute. We may look to the historical background of the enactment, the circumstances attending its passage, the purpose to be accomplished, and the effect the statute may have under the various constructions suggested."[9]
Additionally, we must consider and construe together all parts of an act in pari materia and not isolate a part or parts of an act.[10]
 "`When the interpretation of some one section of an act according to the exact and literal import of its words would contravene the manifest purpose of the legislature, the entire act should be construed according to its spirit and reason, disregarding so far as may be necessary the strict letter of the law.'"[11]
• Kansas legislative history
In 1945, the Kansas legislature created the Office of Veterans' Affairs (OVA), the KCVA's predecessor, to assist veterans.[12] G.S. 1945 Supp. 73-1206 provided: "The office of veterans' affairs shall not be empowered to file application for or to prosecute the claim of any individual for any benefit accruing to such individual under the laws administered by the United States veterans' administration." Thus, the OVA was expressly prohibited from representing veterans in their claims before the federal Veterans' Administration. The 1945 act was repealed six years later and new legislation was enacted at the same time.[13]
The 1951 legislation created the Kansas Veterans' Commission (KVC).[14] Under G.S. 1951 Supp. 73-1209(7)-(8), (now K.S. A. 2006 Supp. 73-1209[7]-[8]), the KVC was to provide a central agency where veterans could obtain information and assistance and to maintain a field service to properly care for veterans' needs. G.S. 1951 Supp. 73-1210 stated:
 "No employee of any veterans' organization shall participate in, or receive any funds hereafter appropriated or made available to the Kansas veterans' commission unless said employing veterans' organization shall recommend to the federal veterans' administration that the supervisor of the Kansas veterans' commission and not more than three (3) other male employees of the commission as may be designated by said supervisor, be accredited to prosecute claims before said federal veterans' administration as accredited representatives of the veterans' organization concerned."[15]
G.S. 1951 Supp. 73-1211 further provided:
 "All claims for compensation filed with the federal veterans' administration by the Kansas veterans' commission shall be prosecuted by an accredited representative of one of the participating veterans' organizations."[16]
Unfortunately, the above language is less than a model of clarity when referring to veterans service organizations. The two statutes utilized four different phrases to describe veterans organizations: "any veterans' organization," "said employing veterans' organization," "veterans' organization concerned," and "participating veterans' organizations." None of the phrases were defined. Thus, it is to difficult to ascertain whether the KVC employees became accredited representatives of the KVC, the employing veterans organization that recommended accreditation, or both.
Two years later, G.S. 1951 Supp. 73-1210 was repealed[17] and replacement language was added to G.S. 1953 Supp. 73-1211. The latter statute provided:
 "All claims filed with the federal veterans' administration by the Kansas veterans' commission shall be prosecuted by an accredited representative of one of the participating veterans' organizations. No employee of any veterans' organization shall participate in or receive any funds hereinafter appropriated or made available to the Kansas veterans' commission unless such employing veterans' organization shall prosecute any and all claims to the federal veterans' administration that are referred to them or their employees by the Kansas veterans' commission."
This language now appearing in K.S.A. 73-1211 has remained unchanged since 1953.
In 1986, the legislature created the KCVA and enacted subsections (a) and (b) of K.S.A. 73-1210a.[18] Under subsection (a), the KCVA's executive director is authorized to appoint employees so that the KCVA could perform its duties.
In 1997, subsection (c) was added to K.S.A. 73-1210a.[19] It authorized the KCVA's executive director to appoint veterans service representatives, required that the veterans service representatives be veterans, and defined veterans service representatives as:
 "[A]ny officer or employee appointed pursuant to this section whose primary duties include:
 "(1) Assisting and representing veterans and their dependents in securing benefits from the federal government and the state of Kansas.
 "(2) Providing information and assistance to veterans and dependents in obtaining special services and benefits based on knowledge of federal and state laws, policies and regulations pertaining to veterans benefits and services."[20]
Thus, it appears that by 1997 the KCVA employees were clearly authorized to prosecute claims on behalf of veterans.
At the public hearing on the 1997 amendment, Mr. Don Myer, Executive Director of the KCVA, testified that for over 30 years veterans service representatives who were appointed by the KCVA's executive director were required to be veterans, but the Division of Personnel wanted to delete that requirement. He opposed such deletion, explaining:
 "The federal benefits that Veteran Services Representatives attempt to obtain for Kansas citizens are based upon the veterans service in the U.S. Armed Forces. Knowledge and experience of what military service entails are vital to the service representative. It allows him to relate to the veteran, and accurately determine the critical information needed. This is especially true when filing a claim, or pursuing an appeal for [a] service connected disability of any type with the Veterans Administration."[21]
Based upon Mr. Myer's testimony, it appears that, despite the somewhat ambiguous language of the 1951 and 1953 legislation, the KVC and its successor, the KCVA, had interpreted G.S. 73-1211 as authorizing the KVC and the KCVA to prosecute claims on behalf of veterans. Two representatives from the Kansas American Legion and Representative Dan Thimesch also supported the 1997 amendment requiring the veterans service representatives to be veterans.[22]
In 2006, the Veterans Affairs Select Committee was briefed about a dual employment agreement between the KVC, and later the KCVA, and two other veterans service organizations.[23] This long-standing agreement was the apparent vehicle which reflected the parties' understanding of the language from the 1951 legislation. Mr. Charles M. Yunker, the Adjutant for the American Legion, Department of Kansas, explained that since 1951, the American Legion and the Veterans of Foreign Wars had a dual employment agreement with the KCVA and its predecessors. Under the agreement, KCVA employees performed duties for both the KCVA and the veterans service organizations and received a salary from the KCVA and a stipend from the veterans service organization. However, the KCVA had raised issues over potential liability under the Fair Labor Standards Act of 1938, 29 U.S.C. 201, et seq., and complaints under the State Governmental Ethics Law, K.S.A. 46-214a, et seq.[24]
The American Legion requested funding through a grant program so that it could hire its own staff to prosecute veterans claims.[25] In support of this position, Mr. Yunker provided a copy of e-mail correspondence from the American Legion's national office. It included a statement that the American Legion's attorney concurred with a memorandum dated January 30, 2006, from the Kansas Attorney General advising that "the KCVA is recognized by VA as a VSO [veterans service organization] and therefore KCVA representatives can fully prepare, prosecute, and present veterans' claims to the VA just like representatives of any other recognized VSO."[26]
Mr. Jefferson D. Lawson, the Past State Commander of the Kansas Veterans of Foreign Wars, stated that the intent of K.S.A. 73-1211 was to create a partnership between the KCVA, the American Legion, and Veterans of Foreign Wars, but in the last few years the KCVA sought to sever this partnership.[27] Mr. Lawson believed a grant program with the American Legion and Veterans of Foreign Wars would strengthen the services provided to veterans.[28]
Mr. Darrell Bencken, the State Adjutant with the Kansas Veterans of Foreign Wars, disagreed with the KCVA's concerns about potential liability under the FLSA and ethical complaints, but agreed changes were needed.[29]
The following month the same committee heard public comments on 2006 House Bill 3015 concerning a veterans claims assistance program (also referred to as the grant program) to be administered by the KCVA.[30]
In support of the bill, Mr. George S. Webb, KCVA's Executive Director, testified that K.S.A. 73-1211 should be amended because it was "scarcely understood or even relevant half a century later."[31] Upon inquiry by the committee, another KCVA representative acknowledged there was disagreement whether K.S.A. 73-1211 authorized the KCVA to prosecute claims as a veterans service organization.
The committee also discussed whether K.S.A. 73-1211 should be amended to eliminate competition between the KCVA and the other veterans service organizations.[32] In her subcommittee report, Representative L. Candy Ruff said the legislature must decide as a matter of state policy whether the KCVA should act as a veterans service organization in processing veterans claims to completion.[33] In support of a policy excluding the KCVA from prosecuting claims of veterans, she made a motion to amend K.S.A. 73-1211 in a manner which eliminated the KCVA as an entity authorized to prosecute claims on behalf of veterans.[34]
Representative Ruff withdrew her motion after the committee decided the consequences of amending K.S.A. 73-1211 should be reviewed further.[35]
However, the grant program for veterans claims assistance was enacted and placed in K.S.A. 2006 Supp. 73-1234 through K.S.A. 2006 Supp.73-1236.[36] None of these statutes state that all veterans claims must be prosecuted by the veterans service organizations participating in the grant program to the exclusion of the KCVA. Rather, K.S.A. 2006 Supp. 73-1234 set forth the eligibility requirements for a veterans service organization to receive a grant, one of which is that the veterans service organization must be "congressionally chartered by the United States Congress."[37] This requirement effectively made the KCVA ineligible to receive a grant.
In March 2007, a committee considered 2007 House Bill 2210 which amended K.S.A. 2006 Supp. 73-1234 by placing additional eligibility requirements on participating veterans service organizations.[38] At the hearing, Representative Ruff testified that the original legislation establishing the grant program was designed to: (1) dissolve the dual employment relationship between the state, the American Legion, and the Veterans of Foreign Wars; (2) have the participating veterans service organizations process claims taken at the three veterans hospitals and referred by the KCVA, and (3) allow the KCVA veterans service representatives to continue serving at its rural field offices "as points of intake in the process of veterans seeking benefits from the Veterans Administration."[39]
Representative Ruff also testified that the bill affirmed the state's policy regarding the KCVA serving as its own veterans service organization, i.e., to exclude the KCVA from prosecuting veterans' claims.[40] She indicated that although the KCVA had been advised by the Attorney General that it could prosecute veterans' claims, "this bill clarifies the state's policy" to the contrary.[41] Representative Ruff testified that Vice Chairman Ed Wiegers stated at the KCVA commissioners' meeting on October 20, 2006, that it was not the Commission's intention to have KCVA handle claims from start to finish."[42] Representative Ruff further testified that 2007 House Bill 2210 took the veterans grant program into its second year by "clarifying the state's position on KCVA of not assuming the position of a veteran's service organization."[43]
In the 2007 legislative session, the proposed amendments to K.S.A. 2006 Supp. 73-1234 were enacted.[44] Most notably, the following sentence was added to subsection (a): "No employee of the Kansas commission on veterans affairs shall act as an agent with power of attorney for any claimant."[45] However, despite Representative Ruff's assertions about the proposed amendments, no language was added to the grant program statutes requiring all claims to be prosecuted by the veterans service organizations participating in the grants program. Similarly, K.S.A. 73-1211 was not amended.
• Analysis
A. K.S.A. 73-1211
Your first inquiry is whether K.S.A. 73-1211 precludes the KCVA itself from prosecuting claims on behalf of veterans before the federal Veterans' Administration. You also ask whether the phrase "one of the participating veterans' organizations" in K.S.A. 73-1211 is now defined as the veterans service organizations participating in the grant program that was created by the enactment of K.S.A. 2006 Supp. 73-1234.
As to the latter inquiry, K.S.A. 73-1211 has essentially remained unchanged since 1953, but its language originated in 1951. The legislature could not have intended in 1951 to define the phrase "participating veterans' organizations" as the veterans service organizations participating in a grant program that was not created until 2006. Moreover, no language was placed in either K.S.A. 2006 Supp.73-1234 or K.S.A. 73-1211 to establish a link between the 1951 phrase "participating veterans' organizations" and the
2006 grant program. Thus, to determine what the legislature meant by the phrase "the participating veterans' organizations" in G.S. 1951 Supp. 73-1211 we must look to other action taken by the legislature in 1951.
In 1951, the legislature repealed G.S. 1945 Supp. 73-1206 which prohibited the KCVA's predecessor, the OVA, from filing or prosecuting claims on behalf of veterans before the federal Veterans' Administration. It replaced the repealed statute with G.S. 1951 Supp. 73-1210 and 73-1211.
When an existing law is revised, the presumption is the legislature intended to change the law.[46] This presumption can be weak or strong depending upon the circumstances. Additionally, a revision to an ambiguous statute may indicate legislative intent to correct the ambiguity rather than change the law.[47] Arguably, this presumption applies because the prohibitive language in G.S. 1945 Supp. 73-1206 was unambiguous, but was repealed and replaced with G.S. 1951 Supp. 73-1210 and 73-1211.
G.S. 1951 Supp. 73-1210 required veterans service organizations whose employees received funds from the KVC to recommend to the federal Veterans' Administration that certain KVC employees be recognized to "prosecute claims before said federal Veterans' Administration as accredited representatives of the veterans' organization concerned." G.S. 1951 Supp. 73-1211 authorized the "accredited representative of one of the participating veterans' organizations" to prosecute all claims filed by the KVC with the federal Veterans' Administration. Reading these two statutes together, it appears the phrase "participating veterans' organizations" in G.S. 1951 Supp. 73-1211 referred to the veterans service organizations that recommended the accreditation of KVC employees to the federal Veterans' Administration pursuant to G.S. 1951 Supp. 73-1210.
As noted above, in 1953, the legislature repealed G.S. 1951 Supp. 73-1210 and amended G.S. 1951 Supp. 73-1211. In doing so, the language found in G.S. 1951 Supp. 73-1210 mandating the recommendation of accrediting KVC personnel was deleted. Its remaining language was amended and placed in G.S. 1953 Supp. 73-1211 so that the veterans service organizations whose employees received funds from the KVC were required to prosecute all claims that were referred to them by the KVC. However, the sentence found in G.S. 1951 Supp. 73-1211 was not amended when it was included in G.S. 1953 Supp. 73-1211; thus, the reference to "participating veterans' organizations" remained.
The intent behind the 1953 amendments is unknown. One possible explanation is the inclusion of the sentence found in G.S. 1951 Supp.73-1211 was an oversight because KVC employees were now accredited representatives. Others may claim G.S. 1953 Supp. 73-1211 only authorized the dual employment between the KVC and the other veterans service organizations, e.g., the KVC employee was also an accredited representative of one of the veterans' organization taking referrals from the KVC, but did not prohibit the KVC from prosecuting claims before the federal Veterans' Administration. Some might contend the inclusion of the sentence found in G.S. 1951 Supp. 73-1211 meant only other veterans service organization were authorized to prosecute claims before the federal Veterans' Administration.
The latter explanation is supported by statements that were made during the 2006 and 2007 legislative sessions. However, post-enactment statements, even those by legislators, are not considered when determining legislative intent. This principle is even more applicable where the statements were made years after the enactment of the statute.[48] Nevertheless, this issue is resolved by the legislative action taken in 1997.
In 1997, the legislature enacted K.S.A. 73-1210a(c) expressly authorizing the KCVA to hire veterans service representatives to represent veterans "in securing benefits from the federal government,"i.e., the prosecution of claims before the federal Veterans' Administration. Because K.S.A. 73-1210a(c) makes no reference to the funding of or the prosecution by other veterans service organizations, it is logical to assume that the KCVA employees can prosecute claims as representatives of their employer, the KCVA. Thus, K.S.A. 73-1210a(c) authorizes the KCVA and its employee veterans service representatives to file or prosecute claims before the federal Veterans' Administration.
At best, the language in K.S.A. 73-1211 is not only ambiguous but inconsistent with the language in K.S.A. 73-1210a(c), and at worst is in direct conflict. Yet, the legislature failed to repeal or amend K.S.A.73-1211 in 1997 when it enacted K.S.A. 73-1210a(c) and again in 2007 when it added subsections to K.S.A. 73-1210a.[49] Where an older statute conflicts with a newer statute, "then the more specific, more recent statute controls" because it "`is the later expression of the legislative intent.'"[50] Thus, the provisions in K.S.A. 73-1210a now control with an express authorization for the KCVA to prosecute veterans' claims.
In summary, the legislative intent whether the KCVA itself is precluded from prosecuting claims is no longer determined by the unclear language of K.S.A. 73-1211. Rather, the legislative intent is determined by the more recent and specific statute, K.S.A. 73-1210a, as amended by L. 2007, Ch. 43, § 1. Pursuant to this statute, the legislature expressly authorized the KCVA and its employees to prosecute claims before the federal Veterans' Administration.
B. K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch. 151, § 1
Your second inquiry is whether K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch. 151, § 1, requires the KCVA to prosecute all claims on behalf of veterans only through the grant program.
When the legislature created the grant program in 2006, it did not place language in any statute requiring all claims of veterans to be filed and/or prosecuted through the grant program. Moreover, the legislature also failed to amend the provisions in K.S.A. 73-1210a(c) authorizing the KCVA's veterans service representatives to prosecute claims before the federal Veterans' Administration. This indicates that the legislature intended to provide two avenues for filing or prosecuting veterans claims, one through the KCVA and the other through the veterans service organizations participating in the grant program.
However, the 2007 amendments to K.S.A. 2006 Supp. 73-1234(a) added the following sentence: "No employee of the Kansas commission on veterans affairs shall act as an agent with power of attorney for any claimant."[51] This provision appears to conflict with the provision in K.S.A. 73-1210a, as amended by L. 2007, Ch. 43, § 1, authorizing veterans service representatives employed by the KCVA to represent veterans in their claims before the federal Veterans' Administration.
Thus, your question becomes whether the prohibition in K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch. 151, § 1, applies to all claims or only claims that were referred to the veterans service organizations participating in the grant program?
There is no indication that the prohibition of KCVA employees prosecuting claims applied to all claims filed on behalf of veterans. The 2007 amendments to K.S.A. 73-1234(a) made no references to any other statute, such as K.S.A. 73-1211 or K.S.A. 73-1210a. Similarly, the 2007 amendments to K.S.A. 73-1210a did not repeal or amend subsection (c), but moved it to subsection (f).[52] Reading the 2007 amendments in conjunction with one another, as we are required to do, the prohibition in K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch. 151, § 1, applies only to the grant program and not to the provisions in K.S.A.73-1210a, as amended by L. 2007, Ch. 43, § 1.
Moreover, the legislative history for the grant program leaves no doubt that the dual employment agreement between the KCVA, the American Legion, and the Veterans of Foreign Wars had created problems and that the grant program was enacted to resolve those problems. By placing the prohibition only in the statute for the grant program, it abolished the dual employment relationship that previously existed. Now, the veterans service organizations participating in the grant program cannot use or employ KCVA employees to act as representatives of veterans in the prosecution of their claims.
In summary, K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch.151, § 1, does not require the KCVA to prosecute all claims on behalf of veterans through the veterans service organizations participating in the grant program. Rather, it prohibits the veterans service organizations participating in the grant program from using or employing KCVA employees to represent veterans on their claims.
• Conclusion
In our opinion, the question of whether the legislature intended to preclude the KCVA from prosecuting claims before the federal Veterans' Administration, is not determined by K.S.A. 73-1211, but by K.S.A.73-1210a, as amended by L. 2007, Ch. 43, § 1. Under the latter statute, the legislature expressly authorized the KCVA and its employees to prosecute claims before the federal Veterans' Administration.
It is also our opinion that, by enacting K.S.A. 73-1210a, as amended by L. 2007, Ch. 43, § 1, and K.S.A. 2006 Supp. 73-1234(a), as amended by L. 2007, Ch. 151, § 1, two routes were established to file and prosecute veterans' claims before the federal Veterans' Administration-one through the KCVA and the other through the veterans service organizations participating in the grant program. In doing so, the veterans service organizations participating in the grant program are prohibited from using or hiring KCVA employees to represent veterans in the prosecution of their claims.
Sincerely,
 Paul J. Morrison Attorney General
 Janet L. Arndt Assistant Attorney General
[1] 38 U.S.C. § 5902(a)(1).
[2] 38 C.F.R. § 14.627(k).
[3] 38 C.F.R. § 14.627(a).
[4] 38 C.F.R. § 14.627(l).
[5] 38 U.S.C. § 5902(b)(1)(B).
[6] 38 C.F.R. § 14.628(b).
[7] United States Department of Veterans Affairs, Bulletin 23-S, January 2006.
[8] United States Department of Veterans Affairs, Office of General Counsel, Information Bulletin 2-151, December 2006.
[9] Workers Compensation Fund v. Silicone Distributing, Inc.,248 Kan. 551, 556 (1991) (internal citation omitted).
[10] National Council on Compensation Ins. v. Todd, 258 Kan. 535, 541
(1995).
[11] 258 Kan. at 541 (emphasis by court) (internal citation omitted).
[12] L. 1945, Ch. 302, §§ 1-6.
[13] L. 1951, Ch. 433, §§ § 1-8.
[14] L. 1951, Ch. 433, § 2.
[15] Emphasis added.
[16] Emphasis added.
[17] L. 1953, Ch. 361, § 29.
[18] L. 1986, Ch. 278, §§ 1, 5.
[19] L. 1997, Ch. 28, § 1.
[20] Emphasis added.
[21] Minutes, House Committee on Governmental Organization 
Elections, January 21, 1997 (emphasis added).
[22] Minutes, House Committee on Governmental Organization 
Elections, January 21, 1997, Attachments 9 and 10.
[23] Minutes, Select Committee on Veterans Affairs, February 13, 2006.
[24] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 5, pages 1-3.
[25] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 5, pages 3-4.
[26] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 5, page 5.
[27] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 6, pages 2-3.
[28] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 6, pages 4-5.
[29] Minutes, Select Committee on Veterans Affairs, February 13, 2006, Attachment 6, pages 17-20.
[30] Minutes, Select Committee on Veterans Affairs, March 22, 2006.
[31] Minutes, Select Committee on Veterans Affairs, March 22, 2006, Attachment 5.
[32] Minutes, Select Committee on Veterans Affairs, March 22, 2006.
[33] Minutes, Select Committee on Veterans Affairs, March 22, 2006, Attachment 4, page 2.
[34] Minutes, Select Committee on Veterans Affairs, March 22, 2006, Attachment 10, page 3.
[35] Minutes, Select Committee on Veterans Affairs, March 22, 2006.
[36] L. 2006, Ch. 153, §§ 1-3.
[37] K.S.A. 2006 Supp. 73-1234(f)(1).
[38] Minutes, House Taxation Committee, March 27, 2007.
[39] Minutes, House Taxation Committee, March 27, 2007, Attachment 1, page 1.
[40] Minutes, House Taxation Committee, March 27, 2007, Attachment 1, page 2.
[41] Minutes, House Taxation Committee, March 27, 2007, Attachment 1, page 2.
[42] Minutes, House Taxation Committee, March 27, 2007, Attachment 1, page 2.
[43] Minutes, House Taxation Committee, March 27, 2007, Attachment 1, page 3.
[44] L. 2007, Ch. 151, § 1.
[45] L. 2007, Ch. 151, § 1.
[46] Kaul v. Kansas Dept. of Revenue, 266 Kan. 464, 471 (1998),cert. denied 528 U.S. 812 (1999).
[47] State ex rel. Morrison v. Oshman Sporting Goods Co. Kansas,275 Kan. 763, 773 (2003).
[48] McCarthy v. City of Leawood, 257 Kan. 566, 574-75 (1995).
[49] The provisions in K.S.A. 73-1210a(c) were placed in a new subsection (f), but were not amended. See L. 2007, Ch. 43, § 1.
[50] State ex rel. Tomasic v. Unified Gov. of Wyandotte Co./KansasCity, 264 Kan. 293, 311 (1998) (internal citations omitted).
[51] L. 2007, Ch. 151, § 1.
[52] L. 2007, Ch. 43, § 1.